RONALD E. BERNARD vs. UNITED BRANDS COMPANY
& another.[1]

Nos. 88-P-15, 88-P-561, & 88-P-1239.

Worcester. March 9, 1989. — June 2, 1989.

Present: BROWN, KAPLAN, & PERRETTA, JJ.

*Practice, Civil,* Appeal, Dismissal of appeal, Relief from judgment, Judicial
discretion. *Rules of Appellate Procedure. Rules of Civil Procedure.
Indemnity.*

In a civil action, where a party sought under Mass.R.A.P. 4(c) enlargement
of the time for filing its notice of appeal from a judgment on grounds
of "excusable neglect," the grant of which was reversed on appeal and
review was exhausted, the party was precluded from applying, on sub-
stantially the same factual grounds, to a single justice of this court under
Mass.R.A.P. 14(b) to enlarge for "good cause" its time to appeal from
the judgment. [418-420]

No abuse of discretion appeared in a judge's denial of a party's motion under
Mass.R.Civ.P. 60 (b) for relief from a judgment on a cross-claim for
indemnification in a negligence action, where the evidence warranted
the judge's findings that the party seeking relief had not demonstrated
"excusable neglect" in its alleged late discovery of an agreement allegedly
extinguishing the parties' indemnification agreement, that it had not
established a case for correcting an alleged "manifest miscarriage of
justice," and that it had not proved its charge that the party awarded
indemnification had committed a fraud on the court. [420-423]

CIVIL ACTION commenced in the Superior Court Department
on June 25, 1981.

A cross-claim for indemnification was heard by *Gerald F.
O'Neill, Jr.,* J., and a motion for relief from judgment was
also heard by him.

A motion to enlarge the time in which to file a notice of
appeal was considered in the Appeals Court by *Dreben,* J.,
and was referred by her to a panel of the court.

[1] NRM Corporation.

*James L. Ackerman* (*Joseph J. Wadland* with him) for NRM Corporation.

*Richard R. Eurich* (*John J. Davis* with him) for United Brands Company.

KAPLAN, J. These appeals reduce to a question under rule 60(b) of the Massachusetts Rules of Civil Procedure, 365 Mass. 828 (1974). We mention the previous history.

In 1981, Ronald E. Bernard, claiming to have been injured when a plastics extruder machine exploded at his work station, commenced an action in Superior Court charging negligent design and failure to warn in which he first named United Brands Company (UBC) as defendant and later also asserted his claim against NRM Corporation (NRM).[2] NRM's predecessor (National Rubber Machinery Co., Inc.) had manufactured the machine. UBC secured dismissal of Bernard's action against itself on summary judgment (unopposed) but remained in the action in consequence of a cross-claim by NRM for indemnification based upon provisions in an agreement of December 1, 1969, to which UBC's predecessor (AMK Corporation) was a party. NRM and UBC each moved for summary judgment upon the cross-claim. These motions were denied, as trial appeared necessary to describe the background of the agreement and resolve any ambiguity of its text.

In March, 1985, NRM settled Bernard's claim against it for $110,000, and in October, 1986, the cross-claim for indemnification was tried (nonjury). The trial judge held for NRM against UBC, writing a memorandum with findings and conclusions. Judgment for $110,000 against UBC entered on March 6, 1987.

UBC attempted on April 8, 1987, to lodge in Superior Court a notice of appeal from the judgment, but the clerk refused to file it because the thirty-day period had been exceeded. UBC had misread and misapplied Mass.R.Civ.P. 6(d), 365 Mass. 748 (1974) (the so-called "mailbox rule"). A judge of the Superior Court on May 5, 1987, allowed UBC's motion under Mass.R.A.P. 4(c), as amended, 378 Mass. 929 (1979), on grounds of "excusable neglect" to enlarge the time to file its

---

[2] UBC had impleaded NRM claiming common-law indemnity and Bernard then asserted a direct claim against NRM.

appeal.[3] NRM appealed to our court from the order permitting the late filing. A panel of our court reversed the order, and the Supreme Judicial Court denied further appellate review.

UBC now rallied its forces on two fronts. On December 8, 1987, it appealed to a single justice of our court under Mass.R.A.P. 14(b), as amended, 378 Mass. 939 (1979), to extend for "good cause" its time to appeal from the $110,000 judgment.[4] The single justice referred the application to a panel of the court (which is the present panel) together — if the application be granted — with the appeal from the judgment. NRM opposed the application. It entered an (unnecessary) appeal from the single justice's order of reference.[5]

UBC's second expedient was to move on February 29, 1988, in the lower court for relief from the judgment under rule 60(b) of the Massachusetts Rules of Civil Procedure.[6] Proof was offered on either side by affidavits. On July 27, 1988, the motion was denied, with memorandum, by the same judge who entered the judgment. UBC appeals the denial.

---

[3] "(c) Extension of Time for Filing Notice of Appeal. Upon a showing of excusable neglect, the lower court may extend the time for filing the notice of appeal by any party for a period not to exceed thirty days from the expiration of the time otherwise prescribed by this rule. Such an extension may be granted before or after the time otherwise prescribed by this rule has expired; but if a request for an extension is made after such time has expired, it shall be made by motion with such notice as the lower court shall deem appropriate."

[4] "(b) Enlargement of Time. The appellate court or a single justice for good cause shown may upon motion enlarge the time prescribed by these rules or by its order for doing any act, or may permit an act to be done after the expiration of such time; but neither the appellate court nor a single justice may enlarge the time for filing a notice of appeal beyond one year from the date of entry of the judgment or order sought to be reviewed, or, in a criminal case, from the date of the verdict or finding of guilt or the date of imposition of sentence, whichever date is later."

[5] The appeal apparently was taken for fear that the single justice's order was allowing the rule 14(b) motion. A single justice made it clear that "[t]he intention of the order . . . is not to allow the filing of a late notice of appeal by [UBC] but to allow filing of such notice solely 'for the purpose of presenting the issue to a panel of this court.'"

[6] As proceedings were pending in this court, the 60(b) application could not be heard below without leave. Our single justice granted leave.

So we have before us UBC's application under appellate rule 14(b) (and a nominal appeal, No. 88-P-15, by NRM from the single justice's order of reference). We shall deny the application, thus aborting an appeal, No. 88-P-561, by UBC from the judgment on the cross-claim. In No. 88-P-1239, we affirm the order denying UBC's application under rule 60(b).

1. There is argument that the two routes — appellate rules 4(c) and 14(b) — are mutually exclusive in the sense that a party may not resort to 14(b) if he has moved under 4(c) (or perhaps if he has so moved and the motion has been ruled on). So absolutist a view is discountenanced by the remarks in *Harvard Community Health Plan, Inc.* v. *Assessors of Cambridge,* 384 Mass. 536, 537 & n.2 (1981).[7] We need not go so far. We think it should be held as a matter of litigative economy, if nothing else, that where a 4(c) application has been carried (unsuccessfully) through to the Supreme Judicial Court, then a 14(b) application is precluded at least if it is based on substantially the same grounds as the 4(c) application. That would dispose of the 14(b) application here, for UBC in our view has not improved materially on the application it made under rule 4(c) claiming excusable neglect. But, if there is no definite rule of preclusion in such a case and the matter lies in discretion,[8] we would exercise that discretion against

---

[7] In that case a rule 4(c) motion had been denied below, but no appeal was taken. A rule 14(b) application was then made and allowed in discretion.

[8] As suggested in the *Harvard Community* case.

The present situation does not call for an attempt to state how, precisely, the standard of 4(c) compares with that of 14(b), but we venture the following remarks. "Excusable neglect" looks to " 'circumstances that are unique or extraordinary' "; "is not meant to cover the usual excuse that the lawyer is too busy, which can be used, perhaps truthfully, in almost every case"; is meant " 'to take care of emergency situations only' "; "a flat mistake of counsel about the meaning of a statute or rule may not justify relief: relief is not extended 'to cover any kind of garden-variety oversight.' " *Feltch* v. *General Rental Co.,* 383 Mass. 603, 614 (1981) (citations omitted). See also *Karen Constr. Co.* v. *Lizotte,* 396 Mass. 143, 146 (1985); *Fergione* v. *Minuteman Regional Voc. Tech. Sch. Dist.,* 396 Mass. 1015, 1016 (1986). Compare *McCarthy* v. *O'Connor,* 398 Mass. 193, 195-196, 199-200 (1986) (interpreting Mass.R.A.P. 10[c]). Rule 14(b) is a general rule for enlargement of time, hence the use of the general expression "good cause shown." In the context of time to appeal in civil actions, the first function of

reviving the appeal under 14(b). Indeed, we would reach the same end result if we disregarded the prior 4(c) application altogether and considered independently whether good cause had been shown under 14(b).

Our conclusion is strengthened by our examination of the lower court's interpretation of the indemnity provision leading to the judgment. The interpretation was correct; the judge's explanatory memorandum is reasoned and convincing.

Under the 1969 agreement AMK Corporation, owning all the shares of NRM, sold these shares for a price to Condec National, Inc. (a wholly owned subsidiary of Condec Corporation). Signatories to the agreement were AMK Corporation, Condec National, Inc., and Condec Corporation. Part of the consideration was a promise by AMK (with certain immaterial exceptions) to indemnify Condec National, Inc., Condec, and NRM from liability "arising from any operations, acts, omissions or conduct of NRM or AMK," prior to the date of the agreement, to the extent that the "aggregate" of the liability should exceed $175,000. (See agreement, articles X[a] and X[d].) UBC, succeeding to AMK, contended, despite the use of the term "aggregate," that the indemnification ran only to such liabilities as *individually* exceeded $175,000. It contended also that a clause (agreement, section 11.02), which set an eighteen-month period following December 1, 1969, for asserting claims under the agreement, applied to the indemnification provision, although that provision appeared to be expressly excepted from the clause.[9] The judge, considering the evidence

14(b) is to care for cases where for extraordinary reasons the party was unable to apply for a 4(c) extension within the time allowed in that rule. As to standards, we would not expect 14(b) to depart substantially from the rather exacting standard of 4(c); note that the time to apply under 14(b) can run for as much as a year. The merit of the proposed appeal may be a subject of inquiry under 14(b). See *Tisei* v. *Building Inspector of Marlborough,* 3 Mass. App. Ct. 377, 379 (1975); *Blackburn* v. *Blackburn,* 22 Mass. App. Ct. 633, 635 (1986). In the present case we have the factor of the exhaustion of review of the denial of a 4(c) extension which speaks against a 14(b) extension, as we have said.

[9] A parenthetical phrase in section 11.02 seemed indecipherable and was probably a remnant of a prior, discarded draft of the agreement.

received at trial as well as the relevant texts, rejected both contentions: although the draftsmen, he said, "are not in line for a Pulitzer Prize, . . . the expressed intent of the parties and common sense should prevail." We agree with the judge that the obligation to indemnify extended to the Bernard claim — the exact point of decision.

2. We have to consider whether the judge (the judge who tried the case) abused his discretion in refusing UBC relief from the judgment on the cross-claim. UBC's application was based on its production of an agreement of July 31, 1974, between UBC (succeeding AMK) and Condec Corporation (into which Condec National, Inc., had been merged). NRM adhered expressly only to certain provisions of the agreement. The 1974 agreement called for the exchange of enumerated securities (including a note of NRM) held by UBC under the 1969 agreement, as that had been amended by agreements of 1971, for certain other described securities. UBC asserted that a provision of the 1974 agreement entitled "Concerning the 1969 Agreement" extinguished the indemnity provision of the 1969 agreement and contended that it should be given leave under rule 60(b) to reopen the judgment on the cross-claim and offer this "new" material (probably at a new trial). Affidavits and briefs were submitted in support of the application and in opposition.

UBC cited various subdivisions of 60(b),[10] but it will be convenient to consider topically whether the judge misused his discretion in holding (a) that UBC had not demonstrated "excusable neglect" in its alleged late discovery of the 1974 agreement (and, correspondingly, had not made a case of "newly

---

[10] UBC cited the following subdivisions of rule 60(b) which provide for possible relief from a judgment because of "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; . . . or (6) any other reason justifying relief from the operation of the judgment." The motion is to be made "within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order or proceeding was entered or taken."

discovered evidence"), (b) that UBC had not established a case for correcting an alleged "manifest miscarriage of justice," and (c) that UBC had not proved its charge that NRM had committed a fraud on the court.

(a) The judge in effect found UBC's "neglect" not "excusable." He said "a search for the 1969 agreement for purposes of the Bernard litigation would likely have also turned up the 1974 agreement," and found "highly unlikely [UBC's] position that personnel involved in the Bernard litigation had no corporate memory of these extensive transactions." The findings are not "clearly erroneous" (Mass.R.Civ.P. 52[a], 365 Mass. 816 [1974]); the evidence supports them. See *Murphy* v. *Administrator of Div. of Personnel Admn.*, 377 Mass. 217, 227-228 (1979). It will be enough to recount one telling incident. After judgment on the cross-claim on March 6, 1987, UBC sought out its insurers with respect to insurance protection on its indemnity exposure. Mr. Andrew P. Foster, counsel to Lumbermens Mutual Casualty Company, naturally asked to see the relevant documentation: Foster requested "all documents in the possession of [UBC] that might bear upon the successor liability of [UBC], if any, to the liabilities of its predecessor, AMK Corporation." Michael P. Davan, UBC's director of risk management, asked John Gerah, the assistant secretary of the company and keeper of its records, to assist. Gerah turned over "four transaction binders." Within four hours, it appears, Mr. Foster had his hand on the 1974 agreement and had located the clause upon which UBC tried to rely in its 60(b) application. The date of this incident was August 20, 1987.

(b) UBC contended that the 1974 agreement was "dispositive" of NRM's right of indemnification and, hence, apart from any question of neglect on UBC's part, reopening the proceedings was required to cure an injustice. The judge said, to the contrary, "The briefs of [UBC] and [NRM] on these issues only enhance the idea that these complex matters are not dispositive on their face." Among the "issues" were the following. The provision of the 1974 agreement entitled "Concerning the 1969 Agreement" stated that that agreement "shall be deemed terminated" (with exceptions), but as the signatories to the

agreement were UBC and Condec Corporation, the termination might have been intended to apply to them only and to leave unaffected the 1969 indemnification in favor of NRM. Particularly is this interpretation invited because, subjoined to the 1974 agreement is a provision, over NRM's signature, stating that NRM "joins in, and agrees to be bound by the following provisions of the foregoing Agreement, to the extent that the same may be applicable to it," here reciting three provisions. These provisions did not include the "Concerning" clause.

If, however, it be assumed that there was an intention as between UBC and Condec Corporation to extinguish the indemnification favoring NRM, then there was doubt whether these parties had the power to do so. Although NRM was not a signatory to the 1969 agreement, it may have been so intrinsically dealt with in the agreement as to figure in effect as a party to it and thus to be a necessary party to its rescission or abrogation at least so far as it derived benefits under its terms. But, if NRM were not viewed as in substance a party to the 1969 agreement, it was a third-party beneficiary of it, so the parties could not rescind the agreement as against NRM at least if NRM relied materially upon it, as it may well have done. See Restatement (Second) of Contracts § 311(3) (1981); Farnsworth, Contracts § 10.6 (1982).[11]

(c) UBC charges that NRM committed a knowing fraud on the court (or something close to it) in failing to come forward with the 1974 agreement (i) in response to an interrogatory by Bernard and (ii) in trying the cross-claim.

(i) Bernard's interrogatory 13 read: "Please describe any past or present contractual arrangements, written or verbal, between . . . NRM and [UBC] that pertain to the design, manu-

---

[11] Only a portion of the 1969 agreement, which was very lengthy, appears in the record appendix. UBC did not illuminate the backgrounds of the two agreements, and they remain obscure. As the judge said: "[T]he issues of whether [NRM] was a party to or a third-party beneficiary of the 1969 agreement, the meaning of the 1969 and 1974 agreements and the effect of one upon the other were susceptible to various interpretations which should have been litigated in the original trial." (Both agreements provided for the application of New York law, but it does not appear that this was materially different from the law of Massachusetts.)

facture, sale, installation, or repair of extruders." In response, on August 15, 1983, NRM tendered the 1969 agreement. UBC, to whom the same interrogatory was addressed, replied on September 29, 1983, "At no time did any such contractual arrangements exist." For UBC now to chide NRM about omitting to furnish the 1974 agreement — a UBC corporate document — is strange. NRM was reading the interrogatory quite broadly in producing the 1969 agreement. There is nothing suspect in its not going further to offer the 1974 agreement of which it was not a signatory (and which in its view did not affect the 1969 indemnification provision in its favor). We may add that, while it appears that NRM personnel knew of the 1974 agreement before the trial of the cross-claim, the evidence does not establish just when they became aware of it.

(ii) As to the period of trial of the cross-claim, there is no contention that NRM failed to make any discovery called for by UBC. Compare *Anderson* v. *Cryovac, Inc.*, 862 F.2d 910, 927-928 (1st Cir. 1988). UBC asserts that NRM was bound in any event to volunteer the 1974 agreement. Not so. NRM could suppose UBC might present it to try to prove termination of the indemnification provision of the 1969 agreement (a possible defense which NRM thought untenable). Yet UBC's failure to do so would not appear odd, since UBC was currently arguing, inconsistently, that the indemnification had long since lapsed under the eighteen-month clause of the 1969 agreement.

To conclude about the 60(b) application, the question (to repeat) is whether the judge abused his discretion in declining to reopen and retry the case. We think there is no sound basis for overturning this negative decision of the judge familiar with all aspects of the matter. See *Berube* v. *McKesson Wine & Spirits Co.*, 7 Mass. App. Ct. 426, 434 (1979).[12]

---

[12] Other points raised by UBC are without merit and may be passed over. UBC applied under Mass.R.Civ.P. 60(a), 365 Mass. 828 (1974) (clerical mistakes), for a certain postponement of the date of the commencement of the running of interest against it. The application was granted as requested. Now UBC asks for a more favorable adjustment. Surely this may not be granted, at least on the present appellate level.

The application under rule 14(b) is denied. The appeals in Nos. 88-P-15 and 88-P-561 are dismissed. In No. 88-P-1239, the order appealed from is affirmed.

*So ordered.*