LAWRENCE SAVINGS BANK *vs.* MARTIN GARABEDIAN, JR.,
executor[1] & trustee,[2] & others[3]; JEFFREY DIMINICO & others,[4]
third-party defendants.

No. 99-P-571.

Essex. December 9, 1999. - April 21, 2000.

Present: PERRETTA, GILLERMAN, & LENK, JJ.

*Practice, Civil,* Enlargement of time, Judicial discretion.

In the circumstances of an appeal from a judgment in a civil action, the
defendant-appellants did not demonstrate good cause to warrant granting
their second motion for enlargement of the time within which to file their
appellate brief, pursuant to Mass.R.A.P. 14(b). [160-164]

CIVIL ACTION commenced in the Superior Court Department on
March 26, 1991.

After proceedings in the Superior Court Department, a mo-
tion for a second enlargement of time in which to file an appel-
late brief was heard in the Appeals Court by *Spina, J.*

*Joanne D'Alcomo* for Martin Garabedian, Jr., & others.

*Kathleen C. Stone* for Lawrence Savings Bank & others.

LENK, J. This appeal presents only one issue: whether a single
justice of this court abused his discretion when he denied the
defendants' motion for a second enlargement of time in which
to file their brief. We discern no abuse of discretion warranting
relief.

*Facts and procedural background.* The case underlying the
present appeal, *Lawrence Savings Bank* v. *Garabedian,* is cur-

---

[1] Of the estate of Martin Garabedian, Sr.

[2] Of the Hamp Realty Trust.

[3] Sumner Gladstone, trustee of Hamp Realty Trust, and Violet Garabedian.

[4] Frederick P. Maloof, Jeffery W. Leeds, and William G. O'Hare, all of
whom were individual officers of the plaintiff Lawrence Savings Bank.

rently pending in this court.[5] We briefly rehearse the undisputed history of that appeal to provide some context for the issue presently before us.

On March 26, 1991, Lawrence Savings Bank (bank) filed suit against the defendants, Sumner Gladstone, personally and as trustee of Hamp Realty Trust (trust), Martin Garabedian, Sr., and Violet Garabedian, who was the wife of Martin, Sr.[6] The bank sought to collect monies owed on a promissory note and three personal guarantees made by each defendant individually, all of which were related to real estate that Martin Garabedian, Sr., intended to purchase. The defendants filed numerous counterclaims and third-party claims against the bank and four of its officers.

A default judgment was entered in favor of the defendants against third-party defendant Jeffery Diminico, one of the bank's officers. After a series of summary judgment motions, the trial court ruled in favor of the bank and its officers on all of the defendants' claims, determining as well that Martin Garabedian, Sr., and Sumner Gladstone were liable to the bank. Eventually, the remaining issues of whether Violet Garabedian had signed a personal guarantee and of the bank's damages as to all liable defendants were tried before a jury in June, 1994.

On June 28, 1994, the jury found that Violet Garabedian had signed the personal guarantee and rendered a verdict in the amount of $2,917,525.65 in favor of the bank against the Garabedian defendants and the trust.[7] After a number of posttrial motions had been resolved by the trial judge, a separate and final judgment was entered against the defendants and the trust on February 21, 1997, in the amount of $4,218,080. Violet Garabedian filed a timely motion for a new trial which was denied on September 4, 1997. On October 14, 1997, the defendants filed their notice of appeal. However, the appeal was not docketed until November 25, 1998, apparently due to the wait for the transcript (which was filed on June 18, 1998) and the record assembly.

---

[5]That appeal is docketed in this court as No. 98-P-2212. Oral argument on that case has been postponed pending the resolution of the present appeal.

[6]Martin Garabedian, Sr., died on March 2, 1996. His son, Martin Garabedian, Jr., was substituted as the executor of his father's estate.

[7]The jury also rendered a two million dollar verdict in favor of the bank against Sumner Gladstone. Thereafter, Gladstone filed for bankruptcy and the claim against him was subsequently discharged.

The original due date for the defendants' appellate brief was January 4, 1999. See Mass.R.A.P. 19(a), as amended, 365 Mass. 867 (1974). On December 24, 1998, less than two weeks before the brief was due, the defendants moved pursuant to Mass. R.A.P. 14(b), as amended, 365 Mass. 859 (1974), for an enlargement of time of 120 days to file their brief.[8] They argued that the "good cause" requirement of rule 14(b) was met due to the "complexity" of the case and the trial schedule of defendant's counsel.[9] A single justice of this court granted the defendants a ninety-day extension to April 5, 1999, to file their brief. Her order stated that "[n]o further enlargements shall be granted."[10] Following the grant of the motion, the bank filed its opposition to the defendants' motion. See note 8, *supra.*

On March 8, 1999, approximately one month before the due date as extended for their brief, the defendants moved pursuant to rule 14(b) for a second enlargement of time, this time until June 25, i.e., a further extension of eighty-one days, asserting as "good cause" their counsel's illness. The bank again opposed the motion, arguing that although it did not dispute Mr. Gordon's illness, it would be prejudiced by further delays.

The defendants stated that "good cause" was present for this second extension due to the fact that their counsel, Mr. William Gordon, had been diagnosed with severe obstructive sleep apnea in February, 1999, that had compromised his ability to work on the appellate brief and record appendix.[11] Mr. Gordon was scheduled to undergo surgery to correct the problem on March 29, 1999, shortly before the brief was due on April 5. To demonstrate the need for an extension, the defendants submitted a large volume of supporting evidence, including excerpts from

[8]According to the bank, the defendants served this motion at the close of business on December 24. Due to the Christmas holiday, the bank's counsel was not aware until several days later that the motion had been brought and that the single justice had granted the extension.

[9]The record appendix spans nine volumes and constitutes 4,716 pages. The appendix breaks down approximately as follows: pretrial proceedings, 3,606 pages; trial transcript and exhibits, 960 pages; and posttrial transcript and proceedings, 150 pages.

[10]Justice Lenk was the sitting single justice who granted the ninety-day enlargement of time. The parties to this appeal were informed in advance of argument by the clerk's office that Justice Lenk was scheduled to sit on the panel hearing this appeal and queried as to any objection they might have. The parties voiced no objection.

[11]Sleep apnea is a physiological condition that may affect severely an individual's ability to achieve restful sleep.

Mr. Gordon's medical records, an affidavit of Mr. Gordon and the twenty-one-page Superior Court docket. Also submitted was evidence that the defendants could not afford to retain another law firm because their assets were frozen due to a preliminary injunction. A different single justice of this court denied the defendants' motion without a hearing on March 18, 1999.[12]

Several weeks later, on March 24, 1999, the defendants filed a motion for reconsideration of the single justice's decision and this time requested a lesser extension to May 28. The defendants reiterated their previous arguments and also alleged that all of the other attorneys in Mr. Gordon's law firm were incapable of writing the appellate brief, as none had the requisite experience with the defendants' case and appellate practice in general. The defendants submitted an affidavit by Mitchell Garabedian, the self-described "proprietor and senior attorney" of Mr. Gordon's law firm, and who is also the son of Violet and Martin (Sr.) Garabedian and brother of Martin Garabedian, Jr. This affidavit identified the seven other attorneys who worked in the law office and described their experience and consequent inability to write the appellate brief. In addition, Mr. Garabedian stated that he felt it would be inappropriate for him to represent his family members in their appeal as he would be unable to maintain the required level of professional detachment. This motion was denied the next day without a hearing by the single justice who had initially denied the motion. He observed that the "effort which counsel has put into these [extension] requests, and vigor with which he argued, belie the circumstances and could have been better spent writing the brief. He has other associates in his office who could assist with the brief." Thereafter, the defendants complied with the April 5 deadline by submitting a brief prepared by another associate in the firm that was, they contend, incomplete and only in "technical compliance" with the appellate rules. The defendants now appeal the denial of both their second rule 14(b) motion and the motion for reconsideration.[13]

*Discussion.* Rule 19(a) of the Massachusetts Rules of Appel-

---

[12]The single justice was not required to conduct a hearing on the defendants' motion. See *Tisei* v. *Building Inspector of Marlborough*, 3 Mass. App. Ct. 377, 378 (1975).

[13]Before moving for reconsideration, the defendants also moved to expedite this appeal but the motion was denied. Thereafter, they filed a petition for relief in the Supreme Judicial Court for Suffolk County but later withdrew their petition. The defendants also sought direct appellate review in the

late Procedure states that "the appellant shall serve and file his brief within forty days after the date on which the appeal is docketed in the appellate court." Appellants are thereby ordinarily entitled to only forty days within which to submit their appellate brief. However, if more time is necessary Mass. R.A.P. 14(b) provides, in relevant part, that "[t]he appellate court or a single justice for good cause shown may upon motion enlarge the time prescribed by these rules." *Commonwealth* v. *Montanez,* 410 Mass. 290, 294 (1991). As to the standard for "good cause," this court remarked in *Bernard* v. *United Brands Co.,* 27 Mass. App. Ct. 415, 418 n.8 (1989), that "we would not expect 14(b) to depart substantially from the rather exacting standard of [Mass.R.A.P.] 4(c)." We described the rule 4(c) standard, which is "excusable neglect," as "look[ing] to 'circumstances that are unique or extraordinary'; it is not meant to cover the usual excuse that the lawyer is too busy . . . ; [it] is meant to take care of emergency situations only." *Bernard, supra* at 418, quoting from *Feltch* v. *General Rental Co.,* 383 Mass. 603, 614 (1981).

Decisions on requests for extension of time are reviewed for an abuse of discretion. See *Tisei* v. *Building Inspector of Marlborough,* 3 Mass. App. Ct. 377, 378 (1975); *Standard Register Co.,* v. *Bolton-Emerson, Inc.,* 35 Mass. App. Ct. 570, 573-574 (1993). Discretion is deemed abused when "its exercise has been characterized by arbitrary determination, capricious disposition, whimsical thinking, or idiosyncratic choice." *Greenleaf* v. *Massachusetts Bay Transp. Authy.,* 22 Mass. App. Ct. 426, 429 (1986).

The defendants argue that good cause was shown and that the single justice abused his discretion in denying their motion.[14] In view of all the facts and circumstances before the single justice,

---

Supreme Judicial Court, but this request was denied. Further, on June 28, 1999, the defendants moved to file a substitute brief to replace the brief they filed on April 5. This motion was denied the following day by the sitting single justice (see note 10) and their appeal of that denial has been referred to the panel designated to hear the underlying appeal.

[14]The defendants argue that the Appeals Court policy on enlargement of brief filings (policy), effective October 1, 1998, was applied unfairly by the single justice in this case. The policy states that no more than one motion for enlargement of time per side shall be granted, that the enlargement being sought shall not exceed 120 days and then only on the basis of an affidavit of counsel setting forth a) good cause to warrant the enlargement and b) an explanation why the particular time period is reasonable. The policy further states that "[f]urther enlargements of time will not ordinarily be granted

we think otherwise. The defendants submit that good cause was, as it were, self-evident in their submissions: Mr. Gordon was ill during the early part of 1999, and he was the only attorney in his firm capable of writing the brief. We do not gloss over the debilitating nature of Mr. Gordon's illness and recognize that it may well have hampered substantially his ability to meet his professional commitments. Nevertheless, the defendants would have it that the single justice could focus his attention and base his decision only upon the early part of 1999, when the onset and exacerbation of Mr. Gordon's illness occurred, and only upon Mr. Gordon as the lawyer available to do the work. This is not so.

The defendants did not offer the single justice an adequate explanation as to why their brief was not close to completion in March of 1999 when they sought their second extension. The brief, after all, would originally have been due on January 4, 1999, were it not for the extension until April 5, 1999, granted late in December, 1998, shortly before the brief was first due. It is noteworthy that almost eighteen months had passed between October, 1997, when notice of appeal was filed, and April 5, 1999, the extended due date for the brief. Also to be factored in the equation is the fact that the single justice who granted the first extension until April 5, 1999, coupled the lengthy extension with a warning that further enlargements were not to be expected. What the single justice had before him when considering the defendants' motion for yet more time was, then, a situation where the defendants had had ample time to begin preparation of their appellate brief long before it was initially due on January 4, 1999 (appellate counsel had been trial counsel and many of the appellate issues had been disposed of on summary judgment, thereby obviating counsel's need to wait for a transcript to begin research on such issues),[15] and that they had been accorded additional time and a firm deadline of April 5, 1999.

absent genuine emergency such as a death, illness or serious injury." While there is no indication that the single justice relied specifically on this policy, the policy contemplates that illness might well constitute good cause in appropriate circumstances.

[15]Our review of the defendants' appellate briefs (both as filed and the subsequent "substitute" brief proffered) and of the record for the underlying appeal indicates at least the following. Of the issues presented for appellate review, four appeal from grants of summary judgment and were thoroughly briefed below. A fifth issue was briefed in the defendants' motion for a new trial while a sixth issue involving attorney's fees concerns a request made in a

The single justice was not required to credit the defendants' insistence that only Mr. Gordon was capable of writing the brief for them. In this regard, there are several noteworthy points. The defendants sought a first extension in late December, 1998, because Mr. Gordon, although still physically well, could not complete the job by January 4, 1999, in light of its complexity and his busy trial schedule and caseload. The defendants frame the issue as if only Mr. Gordon himself could assemble the appendix, do the legal research, and write the brief in this matter, and that only he could attend to all the other clients and cases comprising his workload, both in the fall of 1998 before his illness and thereafter in 1999. Mr. Gordon was not a sole practitioner and it is clear from the record that Mr. Gordon had received assistance in the past from other attorneys and staff on this case. Even apart from Mr. Mitchell Garabedian, surely the remaining attorneys and legal professionals in that office could have provided some sort of assistance with assembling the record, performing legal research, and drafting portions of the appellate brief in this case. Indeed, those lawyers — as well as Mr. Garabedian — could at any point have relieved Mr. Gordon of much of his other client and case commitments even if they were somehow utterly incapable of working on the subject brief.[16]

As a final consideration, we look to the "importance of the rights lost" when an extension under rule 14(b) has been denied. See *Commonwealth* v. *White*, 429 Mass. 258, 264 (1999). The defendants argue that the single justice's denial of their second rule 14(b) motion was tantamount to dismissing their appeal and was therefore a violation of their right of due process. We disagree. The defendants lost no rights when their motion was denied: they were able to file an appellate brief, their arguments will be heard by this court after the present issue is resolved, and the court will have the benefit of the nine-volume appendix

posttrial hearing. All of these issues were addressed in the appellate brief timely filed in this court. The "substitute" brief adds one more issue and concerns a jury instruction that defendants requested, but the judge refused to give. We note that Mr. Gordon was trial counsel and, well before he became ill, was presumably quite familiar with the summary judgment and other issues he would likely pursue on appeal. It is apparent from the record, moreover, that much of the effort required for crafting the appellate arguments had been expended well before notice of appeal was filed.

[16]We note that an attorney in the firm did manage to complete a brief and assemble the record appendix in time to meet the April 5, 1999, deadline.

which includes the briefs filed below.[17] A litigant's inability to adhere to procedural rules, moreover, frequently and without violation of due process rights results in the denial of motions and dismissals of appeals. See, e.g., *Commonwealth* v. *Burns*, 43 Mass. App. Ct. 263, 266 (1997) (appeal dismissed due to failure to file timely notice of appeal).

Given the facts before the single justice, his denial of their rule 14(b) motion was neither arbitrary nor capricious. Because the defendants failed to demonstrate good cause, we hold that the single justice did not abuse his discretion in denying their request for a second extension of time within which to file their appellate brief.[18]

*Judgment affirmed.*

---

[17]The defendants' reliance on *Monahan* v. *Washburn*, 400 Mass. 126 (1987), is misplaced. In *Monahan*, the trial judge denied the plaintiff's motion for a trial continuance filed three days before trial. *Id.* at 128. The trial judge then dismissed the plaintiff's malpractice suit with prejudice. *Ibid.* The judge's ruling was overturned due to the Supreme Judicial Court's conclusion that involuntary dismissal was "erroneously Draconian" given the circumstances and that the "legitimate illness of a litigant is generally good cause for granting a trial continuance." *Id.* at 129. The circumstances in *Monahan* are in stark contrast to those here. *Id.* at 127-128. The plaintiff in *Monahan* was a Vietnam veteran who suffered from posttraumatic stress disorder. He was deemed by his physician to be too unstable emotionally to withstand the stress of the legal proceedings. The physician recommended a stabilization period of three months before continuing with the trial. The defendants were aware of the plaintiff's condition and the plaintiff's counsel argued that the plaintiff's testimony was vital to the case. The judge did not consider any alternate penalties before resorting to a dismissal that effectively adjudicated the plaintiff's claim on the merits. In contrast, as noted above, the defendants here have lost no rights because their motion was denied. Nor will their appeal fail to be heard on its merits. Either Mr. Gordon or attorneys in his law firm were available at all times to write the defendants' brief. In these circumstances, the single justice's denial of a second extension can hardly be considered "erroneously Draconian."

[18]Regarding the defendants' motion for reconsideration, we hold that the single justice did not abuse his discretion. See *Piedra* v. *Mercy Hosp., Inc.*, 39 Mass. App. Ct. 184, 188 (1995) (motions for reconsideration reviewed for abuse of discretion). As noted above, after their second extension request was denied by the single justice, the defendants chose to file a flurry of motions with the Supreme Judicial Court and then filed their motion for reconsideration. We agree with the single justice's observation that the defendants' efforts could better have been spent on a brief they felt was more worthy of submission.