TROY INDUSTRIES, INC. *vs.* SAMSON MANUFACTURING
CORPORATION & another.[1]

No. 08-P-1420.

Suffolk. May 1, 2009. - April 12, 2010.

Present: KANTROWITZ, McHUGH, & MEADE, JJ.

*Appeals Court,* Appeal from order of single justice. *Practice, Civil,* Appeal, Enlargement of time, Reconsideration, Notice of appeal. *Words,* "Good cause," "Excusable neglect."

In a civil action, a single justice of this court did not err in applying the "good cause" standard under Mass.R.A.P. 14(b) in determining a party's motion to extend the time for taking an appeal, where that standard was no less exacting than the "excusable neglect" standard under Mass.R.A.P. 4(c) [581-582], nor did the judge abuse his discretion in concluding that the moving party met its burden of showing that excusable neglect underlay its failure to file a timely notice of appeal and that there was good cause for permitting an extension of eleven days [582-583]; moreover, the single justice did not err in allowing the party to proceed under Mass.R.A.P. 14(b) rather than rule 4(c), where the party did not appeal from the denial by a judge in the trial court of its motion under rule 4(c), and an identical standard applies under either rule [583].

A single notice of appeal filed by a party in a civil action, seeking review of so much of a judgment as modified an injunction, dismissed a complaint for contempt, and awarded fees and costs pursuant to G. L. c. 231, § 6F, was to be treated as solely claiming an appeal from the portions of the judgment modifying the injunction and dismissing the complaint for contempt, where the party failed to file a separate notice of appeal seeking review of the award of attorney's fees. [583-584]

CIVIL ACTION commenced in the Superior Court Department on January 14, 2005.

Following entry of a judgment on the merits in the Superior Court, a motion for enlargement of time in which to file a notice of appeal, filed on June 13, 2008, and additional motions for reconsideration were heard in the Appeals Court by *Sikora,* J.

[1]Scott A. Samson.

*Laura L. Carroll* (*Robert J. O'Regan* with her) for the defendants.

*Patricia B. Gary* for the plaintiff.

McHUGH, J. After a judge of the Superior Court dismissed a complaint for contempt brought by Troy Industries, Inc. (Troy), against Samson Manufacturing Corporation and its principal, Scott A. Samson (collectively Samson), the judge ordered entry of a judgment on the merits that also awarded Samson substantial costs and attorney's fees pursuant to G. L. c. 231, § 6F, the statute dealing with frivolous actions. Troy's appeal from the judgment followed a tortuous path, detailed below, but ultimately was saved from extinction by an order of a single justice of this court that extended a critical filing deadline. From that order, and from a subsequent order denying Samson's motion for reconsideration, Samson now appeals. We affirm in part and reverse in part.

*Background.* Troy and Samson manufacture firearm accessories, including hand guards that fit over the barrels of M-16, AR-15, or AK-47 assault rifles. On June 21, 2007, a Superior Court jury in a separate action found that Samson breached a confidentiality agreement with Troy by using Troy's trade secrets to manufacture a modular rail forend (MRF), which is a particular kind of hand guard for the M-16 rifle. The resulting judgment awarded damages and also contained a permanent injunction barring Samson from manufacturing or selling the MRF or any other substantially similar device Samson derived from information it received from Troy under the confidentiality agreement.

On July 18, less than one month later, Troy filed this contempt action against Samson, claiming that Samson had violated the injunction by selling two products that were similar to Troy's MRF and were derived from information covered by the confidentiality agreement. The contempt issues were tried, jury-waived, before the judge who had presided at the earlier jury trial. When the trial ended on December 10, 2007, the judge dismissed the complaint with a brief oral statement of his findings and reasons. Later, on December 20, he supplemented his oral remarks with written findings and conclusions in which he stated that, for reasons not material here, the challenged Samson products were not substantially similar to Troy's MRF. The

judge also found that Samson had not derived the design of either product from information Troy had provided under the confidentiality agreement. Finally, he modified somewhat the scope of the original injunction.

When the judge orally dismissed the contempt complaint on December 10, Samson orally moved for attorney's fees and costs pursuant to G. L. c. 231, § 6F.[2] The judge orally denied the motion. Samson then filed a motion for reconsideration. In response, the judge held a hearing and, in an order dated January 9, 2008, found that the material portions of Troy's complaint were "wholly insubstantial, frivolous and not advanced in good faith." Those findings triggered Samson's entitlement to an award under § 6F, so the judge vacated his earlier, oral denial of Samson's motion, ruled that Troy was required to reimburse Samson for the fees and costs it had incurred in resisting the contempt action, and scheduled a hearing to determine the appropriate amount of the reimbursement.

The judge held the hearing on March 10 and the following day entered a written order awarding $84,995.07 in fees and costs. However, during the hearing the judge suggested that counsel for Samson and Troy agree on a draft judgment addressing in one place dismissal of the complaint, modification of the injunction, and the award of fees and costs. Counsel agreed and submitted the draft judgment on March 28, 2008. Judgment entered on April 3, and the Superior Court docket suggests that notice of it was sent to all counsel of record pursuant to Mass.R.Civ.P. 77(d), as appearing in 423 Mass. 1411 (1996).

[2]General Laws c. 231, § 6F, inserted by St. 1976, c. 233, § 1, provides in part as follows:

> "Upon motion of any party in any civil action in which a finding, verdict, decision, award, order or judgment has been made by a judge or justice or by a jury, auditor, master or other finder of fact, the court may determine, after a hearing, as a separate and distinct finding, that all or substantially all of the claims, defenses, setoffs or counterclaims, whether of a factual, legal or mixed nature, made by any party who was represented by counsel during most or all of the proceeding, were wholly insubstantial, frivolous and not advanced in good faith. The court shall include in such finding the specific facts and reasons on which the finding is based. If such a finding is made with respect to a party's claims, the court shall award to each party against whom such claims were asserted an amount representing the reasonable counsel fees and other costs and expenses incurred in defending against such claims. . . ."

On May 13, Troy's counsel electronically mailed (e-mailed) Samson's counsel to ask if she had received notice of entry of judgment. Samson's counsel immediately replied with an e-mail saying that she had and that the judgment had entered on April 3. The next day, May 14, Troy filed a notice of appeal from the April 3 judgment "and all [o]rders referenced therein." Simultaneously, Troy moved nunc pro tunc under Mass.R.A.P. 4(c), as amended, 378 Mass. 928 (1979),[3] for an eleven-day extension of time to file a notice of appeal in order to make timely its May 14 filing.[4] The motion was accompanied by affidavits from three of Troy's four attorneys saying that the e-mail of April 13 from Samson's counsel was their first notice that judgment had entered.

The judge nevertheless denied Troy's motion on June 5, stating that "[s]ince Troy's counsel knew that an agreed-upon draft judgment had been filed with the Court on March 28, 2008, it was not excusable neglect to wait until May 13, 2008 to learn whether a judgment had issued." He also allowed Samson's motion to dismiss Troy's appeal.

Troy did not appeal either order. Instead, on June 13, 2008, it filed a motion with a single justice of this court seeking an extension of time pursuant to Mass.R.A.P. 14(b), as amended, 378 Mass. 939 (1979).[5] On July 2, the single justice denied the motion, observing that the trial judge already had denied Troy's

---

[3]Rule 4(c) states the following:

> "Extension of Time for Filing Notice of Appeal. Upon a showing of *excusable neglect*, the lower court may extend the time for filing the notice of appeal by any party for a period not to exceed thirty days from the expiration of the time otherwise prescribed by this rule. Such an extension may be granted before or after the time otherwise prescribed by this rule has expired; but if a request for an extension is made after such time has expired, it shall be made by motion with such notice as the lower court shall deem appropriate." (Emphasis added.)

[4]Rule 4(a) of the Massachusetts Rules of Appellate Procedure, as amended, 430 Mass. 1603 (1999), provides in relevant part that "unless otherwise provided by statute, the notice of appeal . . . shall be filed with the clerk of the lower court within thirty days of the date of the entry of the judgment appealed from . . . ."

[5]Rule 14(b) states as follows:

> "Enlargement of Time. The appellate court or a single justice for *good cause* shown may upon motion enlarge the time prescribed by these

similar motion. The single justice also noted that G. L. c. 231, § 6G,[6] which governs appeals from orders entered pursuant to § 6F, contains a ten-day time limit and that he was "without jurisdiction under [rule] 14(b) to enlarge a time limit set by statute."

Troy successfully moved for reconsideration. On July 25, 2008, the single justice vacated his July 2 order and entered a superceding order allowing Troy's motion as to "all elements of judgment entered . . . on April 3, 2008 . . . so as to make [Troy's May 14] filing timely nunc pro tunc." He reasoned that the April 3 judgment had three parts: (1) amendment of the original injunction; (2) dismissal of the contempt complaint; and (3) the award of fees and costs under § 6F. As to the first two, he applied the "good cause" standard of rule 14(b), see note 5, *supra*, and extended the time to appeal to May 14, nunc pro tunc,[7] stating in part that the trial judge's reasoning would lead

> "to the impractical requirement that counsel routinely check the clerk's office for entries at risk of the imputation of neglect, rather than rely upon a presumably competent

---

rules or by its order for doing any act, or may permit an act to be done after the expiration of such time; but neither the appellate court nor a single justice may enlarge the time for filing a notice of appeal beyond one year from the date of entry of the judgment or order sought to be reviewed, or, in a criminal case, from the date of the verdict or finding of guilt or the date of imposition of sentence, whichever date is later" (emphasis added).

[6]General Laws c. 231, § 6G, as amended by St. 1992, c. 133, § 561, provides in part as follows:

"Any party aggrieved by a decision on a motion pursuant to [§ 6F] may appeal as hereinafter provided. If the matter arises in the superior, land, housing or probate court, the appeal shall be to the single justice of the appeals court . . . . Any party may file a notice of appeal with the clerk or register of the court hearing the motion within ten days after receiving notice of the decision thereon. The clerk or register shall then forward the motion, the court's findings and award, and any other documents relevant to the appeal to the clerk of the court deciding the appeal who, upon receipt thereof, shall refer the matter to the court for speedy decision and shall notify the parties of such decision, which shall be final. . . ."

[7]In the process, he appeared to distinguish between the "excusable neglect" standard contained in Mass.R.A.P. 4(c) and the "good cause" standard contained in Mass.R.A.P. 14(b). More about that momentarily.

process of notification. Counsel for Troy were reasonably entitled to trust that process for the forty days between April 3 and May 13. The backlog in busy sessions may cause delays of that interim. They did not remain unconcerned for an unreasonable duration."

Insofar as the appeal from the fee and cost award was concerned, the single justice noted that the ten-day period for taking an appeal pursuant to § 6G began when a party received notice of the decision awarding fees and costs. Relying on what he found to be credible affidavits from counsel for Troy, he found that counsel for Troy had not received notice of the judgment until their e-mail exchange with counsel for Samson on May 13. That being the case, the single justice reasoned, Troy's May 14 notice of appeal was timely.

Samson then moved for reconsideration, arguing that Troy had filed only one notice of appeal, not the two notices required when a party seeks to appeal both from a judgment on the merits and from an included award pursuant to § 6F, see *Bailey v. Shriberg*, 31 Mass. App. Ct. 277, 284 (1991), and also that Troy had in fact received notice of the § 6F "decision" long before May 13. The single justice denied Samson's motion on August 29, 2008, and this consolidated appeal from both orders of the single justice followed.

*Discussion.* Here, Samson claims that the single justice's order allowing Troy's motion to extend the time for taking an appeal was wrong for three separate reasons, namely, that the single justice (1) failed to apply an "excusable neglect" standard to Troy's rule 14(b) motion; (2) allowed Troy to proceed under rule 14(b) after it failed to appeal the trial judge's denial of its rule 4(c) motion; and (3) allowed Troy to appeal both the § 6F award and the substantive judgment without filing separate notices of appeal.[8] Resolution of claims (1) and (2) affects Troy's right to proceed with the appeal on the merits. Claim (3) affects only

[8]Samson also argues that the single justice erred when he found that the April 3 judgment rather than earlier written decisions awarding fees and costs pursuant to § 6F was the "decision" of relevance for purposes of calculating the ten-day appellate time period prescribed by § 6G. Because our analysis of that issue has no bearing on the outcome of the appeal, we discuss it in a footnote near the end of this opinion. See note 9, *infra.*

Troy's right to appeal from the § 6F award. We discuss the claims in that order.

a. *Application of the rule 14(b) standard.* At the outset, it is important to keep in mind that we review the action of the single justice for errors of law and, if none appear, for abuse of discretion. See *Lawrence Sav. Bank* v. *Garabedian,* 49 Mass. App. Ct. 157, 161 (2000); *Commonwealth* v. *Kegler,* 65 Mass. App. Ct. 907, 907 (2006); *Stephens* v. *Global NAPs,* 70 Mass. App. Ct. 676, 683-684 (2007). To determine whether there was an abuse of discretion, we look to see whether the single justice's exercise of discretion was "characterized by arbitrary determination, capricious disposition, whimsical thinking, or idiosyncratic choice." *New England Allbank for Sav.* v. *Rouleau,* 28 Mass. App. Ct. 135, 144 (1989), quoting from *Greenleaf* v. *Massachusetts Bay Transp. Authy.,* 22 Mass. App. Ct. 426, 429 (1986). We make our own judgments on both issues, recognizing that the burden of showing an abuse of discretion is a difficult one to carry.

Substantively, the Massachusetts Rules of Appellate Procedure contain two separate provisions for seeking extensions of time to file a notice of appeal. Under rule 4(c), a trial court judge may "extend the filing period for up to thirty additional days, if [a party] makes 'a showing of excusable neglect.' If a [party] needs still more time, rule 14(b) authorizes this court, or a single justice thereof, to grant an enlargement of time for up to one year 'for good cause shown.' " (Footnote omitted.) *Commonwealth* v. *Trussell,* 68 Mass. App. Ct. 452, 454 (2007). The latter standard is "no less exacting than 'excusable neglect.' . . . Otherwise, the rules would have the anomalous effect of making it more difficult to obtain an extension of thirty days than it would be to obtain an extension of from thirty-one to 365 days." *Id.* at 454-455. See *Bernard* v. *United Brands Co.,* 27 Mass. App. Ct. 415, 418 n.8 (1989) ("[W]e would not expect [rule] 14[b] to depart substantially from the rather exacting standard of [rule] 4[c]").

Samson's argument that the single justice erroneously believed that the "good cause" standard of rule 14(b) was "less exacting" than the "excusable neglect" standard of rule 4(c) is unpersuasive. To be sure, the single justice did suggest that he perceived a

difference between the two standards, saying in his opinion that he was "not functioning under the 'excusable neglect' standard of [rule] 4(c), but rather under [the] 'good cause' standard of [rule] 14(b)." On the other hand, the single justice made that remark when discussing the appeal from the § 6F award. As he implicitly concluded, and as we discuss below, he did not have to resort either to rule 4(c) or to rule 14(b) to determine that the appeal from that award was timely. Moreover, to the extent that the single justice perceived a difference between the two standards, nothing in the text of his memoranda of decision suggests that he viewed "good cause" as a *less* exacting standard than "excusable neglect." The single justice understood and applied the correct legal standard. See *Commonwealth* v. *Healy*, 452 Mass. 510, 514 (2008), and cases cited.

That being the case, the question becomes whether, on this record, it was an abuse of discretion for the single justice to conclude that there was good cause for allowing Troy to file its notice of appeal eleven days late. We have said in a number of civil cases that "an attorney's oversight does not afford his or her client a remedy under rule 4(c) or rule 14(b)," *Trussell*, *supra* at 455, and lack of notice of entry of a judgment does not, of its own force, extend the time for filing a notice of appeal. See Mass.R.Civ.P. 77(d). Failure to learn of the date judgment entered is often the kind of oversight for which neither rule provides a remedy. See, e.g., *Locke* v. *Slater*, 387 Mass. 682, 685-686 (1982); *BJ's Wholesale Club, Inc.* v. *City Council of Fitchburg*, 52 Mass. App. Ct. 585, 588 (2001). Oversight, however, differs from patience with the court, and lack of notice is "relevant in the determination of whether to extend the time to file the notice of appeal under either [rule] 4(c) or [rule] 14(b)." *Commonwealth* v. *Guaba*, 417 Mass. 746, 752 (1994). See Reporters's Notes to Mass.R.Civ.P. 77(d), 46 Mass. Gen. Laws Ann., Rules of Civil Procedure, at 1089 (West 2006) ("Although under Rule 77[d] lack of notice does not authorize the court to relieve a party for failure to appeal within the time allowed, [Mass.R.A.P.] 4 provides that upon a showing of excusable neglect the court may extend the time for appeal. A failure to learn of the entry of judgment could, in appropriate circumstances, so qualify"). Although the case is close and the circumstances would have justified a contrary result, we think that

the single justice did not abuse his discretion in concluding that Troy met its burden of showing that excusable neglect underlay its failure to file a timely notice of appeal from the April 3 judgment and that there was good cause for permitting an eleven-day extension of the filing deadline.

b. *Troy's failure to appeal the denial of its rule 4(c) motion.* Next, Samson claims that it was improper for Troy to seek relief under rule 14(b) instead of appealing the denial of its rule 4(c) motion. Samson relies on *Bernard*, 27 Mass. App. Ct. at 418, which held "as a matter of litigative economy" that after a party unsuccessfully appeals a rule 4(c) motion through to the Supreme Judicial Court, it cannot seek relief under 14(b) on substantially the same grounds. However, the court in that case declined to find rules 4(c) and 14(b) "mutually exclusive in the sense that a party may not resort to [rule] 14(b) if he has moved under [rule] 4(c)." *Ibid.*

The concern the court expressed in *Bernard* about giving a party two bites at the appellate apple does not exist here. Indeed, Samson's whole point is that Troy did not appeal from the first decision. Moreover, as discussed above, this court applies an identical standard whether a party proceeds under rule 4(c) or rule 14(b), notwithstanding the different language the two rules contain. In all, the single justice did not err by allowing Troy to proceed under rule 14(b) rather than rule 4(c). See *Harvard Community Health Plan, Inc.* v. *Assessors of Cambridge*, 384 Mass. 536, 537 & n.2 (1981) (after Appellate Tax Board denied rule 4[c] motion, instead of appealing that denial, assessors sought and received enlargement of time under rule 14[b]).

c. *Separate notices of appeal.* Finally, and solely with respect to Troy's appeal from the § 6F award, Samson claims the single justice erroneously permitted Troy to proceed with appeals both from the award and from the substantive judgment even though it filed only one notice of appeal. The decision of the single justice on that score presents a pure question of law, and we resolve it for ourselves.

The procedure for appealing from a single judgment containing both an adjudication on the merits and an award pursuant to § 6F, and the consequences of failing to follow that procedure,

were discussed in some detail in *Bailey*, 31 Mass. App. Ct. at 284 & n.8, where we said:

> "In the future, in a situation where a § 6F order is incorporated in a final judgment rather than in a separate order, and a single appeal is filed which does not specify that it is an appeal from the portion of the judgment awarding attorney's fees under § 6F, we shall treat it only as an appeal to a panel from those portions of the judgment that are within the panel's jurisdiction (i.e., the portions other than the award of attorney's fees under § 6F). A party who seeks appellate review both of the judgment and of an award of attorney's fees under § 6F will be required to file two notices of appeal, which should result in two separate assemblies of the record . . . . Ordinarily, action by a single justice on a § 6G appeal will be stayed until disposition by a panel of any appeal that may be taken from the judgment on the merits of the underlying dispute."

> "[] Under the procedure specified for appeals under § 6G, certain papers specified in the statute are physically transmitted to the Appeals Court. Because of the expedited procedure outlined by § 6G, the assembled record does not normally include a transcript of proceedings in the trial court."

See *Department of Rev.* v. *Ryan R.*, 62 Mass. App. Ct. 380, 387 (2004). The requirement for a separate notice of a § 6G appeal to the single justice is critical, for the panel has no jurisdiction to hear such an appeal in the first instance. See *Vittands* v. *Sudduth*, 49 Mass. App. Ct. 401, 412 (2000), citing *Palmer* v. *Murphy*, 42 Mass. App. Ct. 334, 341-342 (1997).

Here, Troy filed a single notice of appeal. The order of the single justice made that filing timely, but the order did not permit Troy to file a second late notice of appeal, nor did Troy ask the single justice for leave to do so. Therefore, following the procedures set out in *Bailey, supra*, we treat Troy's notice solely as claiming an appeal from the portions of the judgment that dismissed its complaint for contempt and modified the injunction. There is no pending appeal from the award pursuant to § 6F.[9]

Insofar as the orders of the single justice allowed Troy to file

---

[9]Although what we have just said disposes of the case, we note briefly our

a late notice of appeal on May 14, 2008, from the April 3, 2008, judgment on the merits, the orders are affirmed. Insofar as the orders deemed Troy's May 14, 2008, notice of appeal to include notice of appeal from so much of the April 3, 2008, judgment as awarded fees and costs to Samson pursuant to G. L. c. 231, § 6F, the orders are reversed.[10]

*So ordered.*

disagreement with Samson's claim that Troy's appeal pursuant to § 6G was untimely because it was not filed within ten days after receiving notice of a § 6F "decision" (as opposed to a judgment) as the text of § 6G requires.

The record reveals that Troy's counsel received notice of the trial judge's decision allowing Samson's motion for fees and costs on January 9 and received a decision containing the actual amount of the award on March 11. Either or both of those decisions, Samson maintains, started the appeal period. However, the single justice found, in effect, that the April 3 judgment was the "decision" awarding fees and costs, and that Troy received notice of that decision for the first time on May 13. Those findings meant that Troy's May 14 notice of appeal was timely. Under the circumstances of this case, we think that the single justice was correct.

Although an appeal of a § 6F award "under § 6G is separate and distinct from an appeal of the judgment" on the merits of the case, *Danger Records, Inc.* v. *Berger*, 444 Mass. 1, 8 (2005), it is "not entirely divorced from the underlying judgment," *Farnum* v. *Mesiti Dev.*, 68 Mass. App. Ct. 419, 423 (2007). See *Ben* v. *Schultz*, 47 Mass. App. Ct. 808, 814 (1999) ("[A] § 6F motion is not a distinct cause of action resulting in a judgment that 'finally resolves the rights of the parties' but instead is a sui generis and collateral proceeding, separate from but not entirely independent of the judgment"). A judge may enter a § 6F award as a postjudgment order or she may incorporate it into the final judgment. See *Bailey*, 31 Mass. App. Ct. at 284. Either way, proceedings on a § 6F motion "may not commence until there has been 'a finding, verdict, decision, award, order or judgment' on the disputed claim or defense, presumably in favor of the party against whom it was made." *Ben, supra* at 813, quoting from G. L. c. 231A, § 6F.

The January 9 decision in this case simply allowed the motion for fees and costs but said nothing about the amount of the award and contemplated further proceedings at which that issue would be addressed. Accordingly, the time to appeal clearly did not begin when that order entered. The March 11 order did state the amount of fees awarded and, under ordinary circumstances, would be the applicable "decision." The day before that order entered, however, both Troy and Samson agreed, at the judge's suggestion, that all dispositive orders in the case should be embodied in a single judgment and that the parties would jointly submit a proposed form of that judgment. One manifest purpose for that suggestion and agreement was to produce some certainty as to when the appellate processes would begin. Accordingly, we think that in the circumstances the April 3 judgment was the "decision" for purposes of § 6G and that the time for appeal began to run when Troy received notice of it.

[10]We deny the requests of both parties for appellate attorney's fees and costs.