NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

18-P-1355                                       Appeals Court

EDWARD R. PIERCE  vs.  HANSEN ENGINEERING & MACHINERY CO., INC., & another.[1]


No. 18-P-1355.

Essex.      May 6, 2019. - July 31, 2019.

Present:  Agnes, Shin, & Wendlandt, JJ.


Practice, Civil, Notice of appeal, Enlargement of time.  Notice, Timeliness.  Words, "Excusable neglect."



Civil action commenced in the Superior Court Department on June 16, 2014.

The case was tried before Timothy Q. Feeley, J.; motions for a new trial or remittitur and to extend the time for filing an appeal were considered by him.


John A. Kiernan (Robert E. Koosa also present) for the defendants.
John P. Wilton for the plaintiff.


WENDLANDT, J.  In this appeal, we reaffirm that garden variety miscommunication between a party's lawyers, each of whom purportedly believed in "good faith" that the other would file

---

[1] Hansen Aerospace Laboratories, Inc.

the notice of appeal, fails to meet the showing of "excusable neglect" required under Mass. R. A. P. 4 (c), as amended, 378 Mass. 928 (1979),[2] to extend the time for filing the notice of appeal.  Accordingly, we dismiss the appeal as untimely.

Background.  The plaintiff, Edward R. Pierce, fell while maneuvering a pallet jack, on which he was carrying an 800-pound freight, from his delivery truck over a dock plate and onto the loading dock of facilities in Danvers operated by the defendants, Hansen Engineering and Machinery Co., Inc., and Hansen Aerospace Laboratories, Inc.  The fall aggravated Pierce's hip osteoarthritis and eventually required him to undergo total hip replacement surgery.  Pierce has not regained full use of his hip and was unable to resume work.

Pierce filed this personal injury action against the defendants, alleging that the defendants' negligent failure to maintain the dock plate -- the mechanism that bridged the gap between a delivery truck's trailer and the loading dock -- caused his injuries.  At the jury trial, he presented evidence that the defendants failed to pursue the periodic, regular

---

[2] We cite to the Massachusetts Rules of Appellate Procedure in effect during the relevant time period.  The Rules were wholly revised, effective March 1, 2019, primarily for stylistic and organizational purposes.  See Mass. R. A. P. 1, Reporter's Notes--2019.  The substantive requirements of Rule 4 at issue in this case are unchanged.  See Mass. R. A. P. 4, as amended, 481 Mass. 1606 (2019).

maintenance schedule that was recommended by the dock plate manufacturer's owner's manual. Instead, the defendants maintained the dock plate only after defects in its operation were reported and required repair. The history of these repairs showed that defects in the dock plate's operation occurred about twice annually and that, on at least one prior occasion, the service call noted the "dock leveler[3] [was] not staying down in below grade position" because of a worn ratchet bar which otherwise functioned to hold down the dock plate. Pierce's technical expert opined that, as a result of the failure to employ the recommended maintenance schedule, components of the dock plate had become worn over time, causing them to fail and allowing the dock plate to spring up as Pierce approached it with the 800-pound freight. Consistent with the expert's opinion, Pierce testified that, after his fall, one of the defendants' employees admitted that there had been problems with the dock plate "for some time."

The jury found the defendants were liable for Pierce's injuries. Final judgment entered on December 26, 2017. The defendants timely moved for a new trial or alternatively, for a remittitur on December 29, 2017. The judge's denial of the motion was entered on February 12, 2018, which commenced the

---

[3] The parties used the terms dock leveler and dock plate interchangeably.

thirty-day period for filing a notice of appeal pursuant to Mass. R. A. P. 4 (a), as amended, 464 Mass. 1601 (2013).

The defendants did not file the notice of appeal on or before March 14, 2018 -- the deadline for doing so. Instead, on March 22, 2018 (eight days after the deadline), the defendants filed a motion to extend the time to file a notice of appeal, pursuant to Mass. R. A. P. 4 (c). The judge allowed the defendants' motion on March 27, 2018. The defendant subsequently filed a late notice of appeal on April 2, 2018 -- nineteen days after the March 14, 2018 deadline and forty-nine days after the denial of defendants' posttrial motion. On April 12, 2018, Pierce filed a notice of appeal from the judge's order allowing a late notice of appeal.

On appeal, the defendants allege various errors by the judge, including the judge's denial of their request for a jury instruction on comparative negligence. In his cross appeal, Pierce asserts that the judge abused his discretion in allowing the defendants to file their notice of appeal late. We turn to the cross appeal.

Excusable neglect. Under Mass. R. A. P. 4 (a), appellants in civil cases are required to file a notice of appeal within thirty days of the date of the entry of the judgment or the

order denying a motion for new trial.[4]  After the thirty-day deadline, a judge can allow a motion for leave to file a late notice of appeal only upon a showing of "excusable neglect." Mass. R. A. P. 4 (c).[5]  We review the judge's allowance of the motion to enlarge time to file a notice of appeal under the abuse of discretion standard.  See Lawrence Sav. Bank v. Garabedian, 49 Mass. App. Ct. 157, 161 (2000).  If the record does not support a showing of excusable neglect, "there is no room within which judicial discretion can operate."  Shaev v. Alvord, 66 Mass. App. Ct. 910, 911 (2006).

Here, the defendants purport to show excusable neglect on the basis of an affidavit from their appellate counsel in which he avers that (i) he was on vacation in Thailand at the time of the deadline to file a notice of appeal, (ii) he had been retained by the defendants as appellate counsel, (iii) he had

---

[4] "In a civil case, unless otherwise provided by statute, the notice of appeal required by Rule 3 shall be filed with the clerk of the lower court within thirty days of the date of the entry of the judgment appealed from" or the entry of the order denying a new trial motion.  Mass. R. A. P. 4 (a).

[5] "Upon a showing of excusable neglect, the lower court may extend the time for filing the notice of appeal by any party for a period not to exceed thirty days from the expiration of the time otherwise prescribed by this rule.  Such an extension may be granted before or after the time otherwise prescribed by this rule has expired; but if a request for an extension is made after such time has expired, it shall be made by motion with such notice as the lower court shall deem appropriate."  Mass. R. A. P. 4 (c).

reviewed the trial record, and (iv) before leaving for Thailand, he had recommended to the defendants and defendants' trial counsel that the defendants appeal. He states, however, that he "had a good faith belief and understanding that [the defendants'] trial counsel would file the Notice of Appeal" in his absence.[6] He does not set forth the basis for his "good faith belief." Appellate counsel further avers that he "believe[d]" the defendants' trial counsel, who he "believe[d]" was unaware of his travel plans, "had a good faith belief and understanding" that he (appellate counsel) would file the notice of appeal. Again, the affidavit sets forth no basis for this "good faith belief." Notably, the defendants' trial counsel, who was the only attorney who had entered an appearance for the defendants in Superior Court at the time the deadline to file the notice of appeal lapsed, provided no affidavit. Furthermore, the record includes an affidavit from Pierce's counsel, appending copies of text messages between him and the defendants' trial counsel in which Pierce's counsel asks whether

---

[6] Implicit in this statement is the fact that appellate counsel knew of the deadline for filing the notice of appeal, and knew that the deadline would fall during his previously scheduled vacation. Appellate counsel had been retained in December 2017 by the defendants' insurer to review the trial proceedings to determine whether there was a basis for an appeal. Sometime in January 2018, he relayed his opinion that there was a meritorious basis for an appeal to the defendants' trial counsel and the insurer.

the defendants intend to appeal.  In response, on March 19, 2018 (four days after the deadline for filing the notice of appeal), the defendants' trial counsel states, "[I] know you[']re waiting on [an] answer from me, . . . [I]'m in court all day and our office is waiting to get information from the [defendants'] insurer.  As soon as I can answer your question I will get it to you."

This court's decision in Shaev, 66 Mass. App. Ct. at 911-912, is controlling.  In Shaev, one of the plaintiff's lawyers -- a partner at the firm serving as local counsel in the matter -- believed that another of the plaintiff's lawyers -- an associate at the same firm -- would notify lead counsel located in New York of the final judgment dismissing the action.  Id. at 911.  The associate, in turn, believed the partner would notify lead counsel.  Id.  Because of this "miscommunication," lead counsel was not notified of the judgment dismissing the action. Id.  When the error was realized, the plaintiff promptly filed a motion under Mass. R. A. P. 4 (c) to permit late filing of the notice of appeal.  Id.  The Superior Court judge allowed the motion on the ground that the matter was "important," "the legal issues were significant and debatable," and "the client should not suffer the consequences of the lawyer's neglect."  Id.

We reversed, holding that the factors considered by the judge were "simply not factors that are relevant to an analysis

whether the neglect involved was excusable," and that "excusable neglect is meant to apply to circumstances that are unique or extraordinary, not to any 'garden-variety oversight.'" Shaev, 66 Mass. App. Ct. at 911, quoting Feltch v. General Rental Co., 383 Mass. 603, 613-614 (1981). "Excusable neglect . . . is meant to take care of emergency situations only." BJ's Wholesale Club, Inc. v. City Council of Fitchburg, 52 Mass. App. Ct. 585, 587-588 (2001), quoting Feltch, supra.

As in Shaev, 66 Mass. App. Ct. at 911, and BJ's Wholesale Club, Inc., 52 Mass. App. Ct. at 588, the record here does not present a situation that is "unique or extraordinary" as required under Mass. R. A. P. 4 (c). Compare Eyster v. Pechenik, 71 Mass. App. Ct. 773, 782 (2008) ("good cause" for failure to timely appeal where register failed timely to docket order and send notice to parties). Significantly, the record is devoid of any explanation for appellate counsel's belief that trial counsel would file the notice of appeal, and there is no explanation to support trial counsel's belief that appellate counsel would file the notice of appeal. There is no affidavit from trial counsel; yet, there is a suggestion in trial counsel's correspondence with Pierce's counsel that the defendants (or their insurer) failed to direct the filing of the notice of appeal, despite being advised by appellate counsel that he believed the appeal was warranted long before the

deadline for filing the notice, and despite inquiries from Pierce's counsel as to whether the defendants intended to appeal.[7]  At best, the record shows the type of miscommunication that Shaev, supra, held to be a "garden-variety oversight" that is insufficient to warrant a finding of excusable neglect.[8,9]

Conclusion.  The order allowing the motion to extend the time to file a notice of appeal is reversed, and the appeal is dismissed.

So ordered.

---

[7] The defendants purport to distinguish Shaev on the ground that it involved a breakdown in "intramural communication," 66 Mass. App. Ct. at 912, whereas here the two lawyers were at different firms.  In the absence of any explanation whatsoever as to how, if at all, the fact that the lawyers here were at different firms affected their purported "good faith" miscommunication, such a distinction is unavailing.

[8] Even if the appeal were timely, see generally Roch v. Mollica, 481 Mass. 164, 165 n.2 (2019), we would not alter the judgment in favor of Pierce because none of the issues raised by the defendants warrant a remand.  We agree with the judge that the defendants' evidence, which did not contradict or even address Pierce's rationale for backing out of the trailer in the manner that he did, did not warrant a comparative negligence instruction.  See Shahzade v. C.J. Mabardy, Inc., 411 Mass. 788, 795-796 (1992).  Moreover, the defendants waived objection to the judge's decision to not give an instruction on mitigation, see Mass. R. Civ. P. 51 (b), 365 Mass. 816 (1974), and the judge did not abuse his discretion in permitting evidence of the defendants' postaccident repairs to show the defendants' practice of repairing the dock plate as needed.  See Canavan's Case, 432 Mass. 304, 311 (2000).  In light of the evidence presented by Pierce and the testimony supporting the damages award, none of the other arguments raised has merit.

[9] Pierce's request for appellate counsel fees and costs is denied.  See Yorke Mgt. v. Castro, 406 Mass. 17, 18-19 (1989).