NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-13254

COMMONWEALTH  vs.  HUBERT LEE SMITH, JR.


Suffolk.      November 4, 2022. – February 28, 2023.

Present:  Budd, C.J., Gaziano, Lowy, Cypher, Kafker,
                   & Wendlandt, JJ.


Practice, Criminal, Capital case, Postconviction relief,
     District attorney.  Time.  Words, "Good cause," "Excusable
     neglect."



Indictment found and returned in the Superior Court on
February 17, 1978.

Following review by this court, 384 Mass. 519 (1981), a
motion for postconviction relief, filed on April 7, 2020, was
heard by Janet L. Sanders, J.

A motion to dismiss a request for leave to appeal and a
motion to accept the request for leave to appeal as timely filed
were reported by Gaziano, J., in the Supreme Judicial Court for
the county of Suffolk.


Cailin M. Campbell, Assistant District Attorney, for the
Commonwealth.
     Michelle Menken for the defendant.
     The following submitted briefs for amici curiae:
     Stanley Donald, pro se.
     Robert F. Hennessy for Committee for Public Counsel
Services.

Katharine Naples-Mitchell for Families for Justice as Healing.

GAZIANO, J.  On July 6, 2022, the defendant was released on parole after having served forty-four years in prison for his conviction of murder in the first degree.  A Superior Court judge granted the defendant's motion for postconviction relief on the ground that the Commonwealth's 1978 package plea offer violated the defendant's rights to due process.  The judge then reduced the defendant's conviction from murder in the first degree to murder in the second degree.  Following issuance of the judge's order on August 4, 2021, the Commonwealth filed a notice of appeal, but it did not file the requisite gatekeeper petition under G. L. c. 278, § 33E, until five and one-half months later, substantially exceeding the thirty-day filing requirement set forth in Mains v. Commonwealth, 433 Mass. 30, 36 n.10 (2000).  The single justice initially granted the Commonwealth's petition.  After the defendant sought reconsideration, supplemental briefing was filed, the single justice conducted a hearing, and he then allowed the Commonwealth's gatekeeper petition, contingent upon the full court's approval of the Commonwealth's motion for leave for late filing.  The single justice then reserved and reported the matter to this court.

To resolve the reported issues, we must decide whether the Commonwealth had good cause to file its gatekeeper petition pursuant to G. L. c. 278, § 33E, more than five months late. Because the petition was not filed within the applicable thirty-day period, and because there was no showing of good cause to excuse the delay, see Mass. R. A. P. 14 (b), as appearing in 481 Mass. 1626 (2019), the Commonwealth's petition must be dismissed as untimely.

In addition, we conclude that the thirty-day deadline for filing a gatekeeper petition set forth in Mains, 433 Mass. at 36 n.10, does not allow adequate time in which to develop and file the substantive pleadings required for such a petition. Accordingly, for petitions under G. L. c. 278, § 33E, filed after the date of issuance of the rescript in this case, the filing period shall be extended to sixty days.[1]

1. Background. On February 10, 1978, Max Fishman, who was making oil deliveries to customers in the aftermath of the so-called "Great Blizzard of 1978," was shot and killed during a robbery committed by the defendant and a codefendant.[2] The two were arrested, and on February 17, 1978, a grand jury returned

---

[1] We acknowledge the amicus briefs submitted by Stanley Donald, the Committee for Public Counsel Services, and Families for Justice as Healing.

[2] At the time of the shooting, the defendant was twenty years old and his codefendant was fifteen years old.

indictments charging the defendant with murder in the first degree, armed assault with intent to rob, unlawfully carrying a firearm, and conspiracy to commit robbery.[3]

Before trial, the prosecutor offered the defendant a plea arrangement; the Commonwealth was willing to reduce the charges against him from murder in the first degree to murder in the second degree, if both the defendant and the codefendant agreed to plead guilty to the same charges.[4]  The defendant told police that he had used the gun involved in the shooting, and his counsel indicated to the prosecutor that his client was "anxious" to plead guilty to murder in the second degree.  The codefendant, however, declined the plea offer, and the case proceeded to a joint trial.

During deliberations, the jury sent three questions to the judge that indicated that they were likely to find the defendant guilty of murder in the first degree and the codefendant guilty of murder in the second degree.  After further consultation with his counsel, the codefendant pleaded guilty to murder in the second degree.  Counsel for the defendant argued vigorously that his client should be offered the same plea agreement, but the

---

[3] The conspiracy charge was not pursued at the joint trial.

[4] This type of plea agreement also is referred to as a package, contingent, linked, or wired plea.  See United States v. Mescual-Cruz, 387 F.3d 1, 3 (1st Cir. 2004), cert. denied, 543 U.S. 1175 and 543 U.S. 1176 (2005).

prosecutor declined to engage in further plea negotiations with the defendant; the prosecutor asserted that all plea negotiations had terminated when the jury began their deliberations. After the judge rejected the defendant's attempted plea, the defendant was convicted of murder in the first degree and sentenced to the statutorily mandated sentence of life in prison without the possibility of parole.[5]

In 1980, the defendant filed a motion for a new trial in the county court; he argued that he was entitled to a new trial because he should have been permitted to plead guilty to murder in the second degree, as the prosecutor initially had offered, and as his codefendant later had done. After the single justice remanded the case to the Superior Court for an evidentiary hearing, a Superior Court judge determined that there had been no outstanding plea offer when the case was given to the jury. The single justice then denied the defendant's motion, and the defendant appealed from the denial of the motion for a new trial; we consolidated that appeal with the defendant's direct appeal. We accepted the motion judge's finding that the plea offer was no longer in effect once the jury received the case and affirmed the convictions and the denial of the motion for a

---

[5] The defendant also was convicted of assault with intent to rob, G. L. c. 265, § 18, and unlawfully carrying a firearm, G. L. c. 269, § 10 (a).

new trial.  See Commonwealth v. Smith, 384 Mass. 519, 523 (1981).

The defendant subsequently filed two additional motions for a new trial.  The second, filed in August of 1996, asserted that the prosecutor's exercise of certain peremptory challenges had been based on race and, thus, unconstitutional; that motion was denied without a hearing.  The third motion for a new trial, filed in September of 2007, argued that trial counsel had been ineffective, the trial judge's decision to preclude the defendant from cross-examining his codefendant was error, and the plea agreement that had been offered to the defendant should be enforced "in the interest of justice."  That motion also was denied.

In April of 2020, more than a decade later, the defendant filed the instant motion to reduce the verdict from murder in the first degree to murder in the second degree.  This time, the defendant argued that the "locked plea" offered to him and his codefendant violated his rights to due process under the Federal Constitution and the Massachusetts Declaration of Rights. Hearings on the defendant's motion were held in February and April of 2021.  On June 2, 2021, the motion judge issued a memorandum and order in which the judge concluded that "the locked plea offer was fundamentally unfair and in violation of substantive due process," and ordered a hearing on the issue of

remedy. On June 9, 2021, the Commonwealth filed its first notice of appeal. The hearing on the appropriate remedy was held on July 27, 2021. Following the hearing, the parties jointly filed a memorandum in which they agreed that, in light of the judge's decision, the appropriate remedy would be to reduce the defendant's conviction of murder in the first degree to murder in the second degree. On August 4, 2021, the motion judge reduced the verdict from murder in the first degree to murder in the second degree, pursuant to Mass. R. Crim. P. 25 (b) (2), as amended, 420 Mass. 1502 (1995).

The Commonwealth filed a second notice of appeal on August 13, 2021. In an e-mail message to defense counsel on September 9, 2021, the appellate prosecutor indicated that she was going to pursue the appeal as soon as she received transcripts of the prior hearings, which had been handled by a different prosecutor. On September 15, 2021, the defendant was resentenced, and he therefore became eligible for parole, as by that point he had been incarcerated for forty-three years. See Commonwealth v. Perry, 389 Mass. 464, 470 (1983) ("parole is . . . available to a person convicted of murder in the second degree who has served fifteen years in prison"); G. L. c. 265, § 2; G. L. c. 127, § 133A. The transcripts of the hearings were ordered on November 5, 2021, and the prosecutor received them on December 3, 2021. Nothing further was filed until the

prosecutor filed the instant gatekeeper petition on January 21, 2022.

A hearing on the defendant's application for release on parole ultimately was scheduled for January 27, 2022. In response to the Commonwealth's filing of its gatekeeper petition, on January 27, 2022, the defendant filed an emergency motion to dismiss the petition, citing its untimeliness. On that same day, the Commonwealth filed a motion to accept its petition as timely filed due to delays in receiving the hearing transcripts necessary for drafting the petition, absences related to COVID-19 and vacation, and the unusually busy workload in the district attorney's office during the filing period. Also on the same day, the single justice allowed the motion for late filing, while the defendant's parole hearing went forward as scheduled.

Thereafter, the defendant sought reconsideration of the single justice's allowance of the Commonwealth's motion for leave for late filing of its gatekeeper petition. See Commonwealth v. Jordan, 469 Mass. 134, 144-145 (2014). The defendant argued that the Commonwealth had failed to demonstrate excusable neglect or good cause, as required by Mass. R. A. P. 4 (c), as appearing in 481 Mass. 1606 (2019), or Mass. R. A. P. 14 (b). Following a hearing and supplemental briefing, the gatekeeper petition was allowed, contingent upon the full

court's approval of the Commonwealth's motion for leave for late filing; the matter then was reserved and reported to the full court.

2. Discussion. In reserving and reporting the matter, the single justice posed two questions to the full court: (1) "whether the defendant's right to due process or to the protections against double jeopardy preclude reinstatement of a conviction of murder in the first degree after the time in which to file a gatekeeper petition challenging the reduction in the verdict has expired"; and (2) "whether the thirty-day deadline for filing set forth in [Mains, 433 Mass. at 36 n.10,] allows adequate time in which to file a gatekeeper petition, or whether a different period of time is warranted."

a. Filing deadline for petition pursuant to G. L. c. 278, § 33E. The procedures set forth in G. L. c. 278, § 33E, govern petitions for leave to appeal from postconviction motions in capital cases, after this court has affirmed the defendant's conviction. See Commonwealth v. Francis, 411 Mass. 579, 583 (1992); Dickerson v. Attorney Gen., 396 Mass. 740, 742 (1986). General Laws c. 278, § 33E, however, does not specify a time period in which such a petition must be filed. Consequently, this court has determined that "a gatekeeper petition pursuant to G. L. c. 278, § 33E, [must] be filed within thirty days of

the denial of a motion for new trial."  See Mains, 433 Mass. at 36 n.10.

The Commonwealth suggests that this thirty-day period of time for filing a gatekeeper petition should be extended or, alternatively, that the court should recognize that the filing window may be enlarged, within the sound discretion of the single justice.  The defendant maintains that the deadline set forth in Mains is absolute.

The thirty-day period set forth in Mains was adopted, in part, in reliance on the rules of appellate procedure and, in particular, Mass. R. A. P. 4 (b), as amended, 489 Mass. 1601 (2022).  Rule 4 (b) governs the filing of appeals in criminal cases, and requires a notice of appeal to be filed within thirty days of the issuance of the challenged decision.  See Commonwealth v. White, 429 Mass. 258, 262 (1999) ("we have concluded that the time limitations of rule 4 [b] apply to circumstances other than those specified in that rule"). Pursuant to Mass. R. A. P. 4 (b),

> "(1) In a criminal case, unless otherwise provided by statute or court rule, the notice of appeal required by Rule 3 shall be filed with the clerk of the lower court within [thirty] days after entry of the judgment, appealable order, or adjudication appealed from, or entry of a notice of appeal by the Commonwealth, or the imposition of sentence, whichever comes last.
>
> "(2) If a motion for a new trial is filed under Massachusetts Rules of Criminal Procedure 25 (b) (2) or 30 within [thirty] days of the verdict, finding of guilt,

judgment, adjudication, or imposition of sentence, the period to appeal shall not terminate until [thirty] days from entry of the order disposing of the motion. If a motion is filed for reconsideration within [thirty] days of entry of the order disposing of the motion, the period to appeal shall not terminate until [thirty] days from entry of the order disposing of the motion for reconsideration.

"(3) If a motion is filed for reconsideration within [thirty] days of an appealable order, judgment, or adjudication, the period to appeal from the decision for which reconsideration was sought shall not terminate until [thirty] days from entry of the order disposing of the motion for reconsideration."[6]

Like other procedural rules governing filing periods, rule 4 permits an extension of time for filing. Under rule 4 (c),

"Upon a showing of excusable neglect, the lower court may extend the time for filing the notice of appeal or notice of cross appeal by any party for a period not to exceed [thirty] days from the expiration of the time otherwise prescribed by this rule. Such an extension may be granted before or after the time otherwise prescribed by this rule has expired; but if a request for an extension is made after such time has expired, it shall be made by motion with service upon all other parties."

Rule 14 (b) further provides for an enlargement of time,

"The appellate court or a single justice of the appellate court in which the appeal will be, or is, docketed for good cause shown may upon motion enlarge the time prescribed by these rules or by its order for doing any act, or may permit an act to be done after the expiration of such time; but neither the appellate court nor a single justice may enlarge the time for filing a notice of appeal beyond [one] year from the date of entry of the judgment or order sought to be reviewed, or, in a criminal case, from the date of the verdict or finding of guilt or the date of imposition of sentence, whichever date is later."

_____

[6] In February 2022, after the Commonwealth filed its gatekeeper petition, Mass. R. A. P. 4 (b) was amended to replace rule 4 (b) (2) and to add rule 4 (b) (3). These changes are not relevant to this case.

Thus, the approximately 140-day delay here was subject to rule 14 (b).  Contrary to the defendant's argument that, once filing was delayed thirty-one days past entry of the order reducing his degree of guilt, any challenge exceeded the period prescribed in Mains, and the single justice had no authority to extend that period, the Commonwealth could have sought leave for late filing of its gatekeeper petition at any point within the 140-day period of delay.

We note that the type of filing contemplated by rule 4 (b) when Mains was adopted was (and continues to be) a notice of appeal, which requires significantly less than what is necessary to write a gatekeeper petition.  Filing a notice of appeal merely requires a one-sentence document indicating the party's intent to appeal and the names of all parties.  See Mass. R. A. P. 3 (c), as appearing in 481 Mass. 1603 (2019).  By contrast, the petition that must be filed pursuant to G. L. c. 278, § 33E, requires extensive legal research and writing; a petitioner must demonstrate that there is a "new and substantial" issue worthy of review by the full court.  "[W]here the Commonwealth rather than the defendant petitions the gatekeeper, 'the single justice's primary focus should be on the meritoriousness or "substantiality" of the Commonwealth's position on appeal and less on the newness of the underlying issue.'"  Commonwealth v.

Watkins (No. 1), 486 Mass. 801, 803 n.6 (2021), quoting Commonwealth v. Smith, 460 Mass. 318, 322 (2011).

Moreover, a denial of a gatekeeper petition pursuant to G. L. c. 278, § 33E, may not be appealed.  If the single justice denies the petition, "that decision 'is final and unreviewable.'"  See Commonwealth v. Wampler, 488 Mass. 1003, 1004 (2021), quoting Commonwealth v. Anderson, 482 Mass. 1027, 1027 (2019).

Thus, following issuance of the rescript in this case, parties will have sixty days following the allowance or denial of a postconviction motion within which to file a gatekeeper petition pursuant to G. L. c. 278, § 33E.  See Mandeville v. Gaffney, 487 Mass. 308, 310 (2021) (Mains "thirty-day deadline was imposed prospectively").  The extension of the filing deadline will allow parties the time necessary to obtain transcripts, conduct research, and craft arguments.  The extension of the filing period will promote fairness and equity, will serve the defendant's and the Commonwealth's interests in an accurate verdict, and also will protect all parties' interests in the finality of judgments.

We turn to consider whether, here, there was good cause for the delay in filing of the Commonwealth's petition.

b.  Good cause.  As stated, because G. L. c. 278, § 33E, is silent concerning the procedural restraints on filing such

challenges, we analyze delays in filing gatekeeper petitions under the appellate standards of "excusable neglect" and "good cause." See Mass. R. A. P. 4 (c), 14 (b). The rules of appellate procedure give "courts broad discretion and authority to permit a deserving party, on showing of 'excusable neglect' or 'good cause,' to prosecute an appeal notwithstanding [the] failure to comply with a procedural time limitation." Giacobbe v. First Coolidge Corp., 367 Mass. 309, 315-316 (1975). Rule 4 (c) allows a motion judge to grant an extension of time of up to sixty days for filing a notice of appeal, upon a showing of excusable neglect. See Mass. R. A. P. 4 (c). Excusable neglect, for purposes of late filing under rule 4 (c), applies to situations that are "unique or extraordinary" and not to any "garden-variety oversight." Shaev v. Alvord, 66 Mass. App. Ct. 910, 911 (2006), citing Feltch v. General Rental Co., 383 Mass. 603, 613-614 (1981). At the same time, rule 14 (b) provides the single justice or an appellate court authority to enlarge the time in which to file a notice of appeal to up to one year, upon "good cause shown." See Mass. R. A. P. 14 (b).

Thus, for the Commonwealth's gatekeeper petition to be timely filed, it would have had to have been filed by September 3, 2021, or thirty days after entry of the judge's decision and order on resentencing. See Mandeville, 487 Mass. at 310; Mass. R. A. P. 14 (a). Rule 4 (c) only permits an

extension of up to sixty days, which would have required the Commonwealth to have filed its petition by October 4, 2021, whereas the Commonwealth ultimately filed its petition on January 21, 2022. Accordingly, we analyze the Commonwealth's delay under Mass. R. A. P. 14 (b), which permits the enlargement of time in which to file a notice of appeal to up to one year, upon a showing of good cause.

The Commonwealth maintains that there were "unique and extraordinary circumstances that caused the delay" and which demonstrate the existence of good cause. The appellate prosecutor assigned to the case details four reasons in support of her argument that there was good cause to excuse the Commonwealth's delay. First, the prosecutor avers that she was "repeatedly misled" by other members of her office about transcripts of the hearings on the defendant's motion to reduce the verdict having been ordered; the prosecutor stated that without those transcripts, it would have been unethical for her to draft the gatekeeper petition, because she would not have known what the previously assigned prosecutor had argued at the hearings on the motion to reduce the verdict. Second, at the time that the gatekeeper petition should have been drafted, the prosecutor's unit was missing five members, which led to an overwhelming workload and the inability to reassign drafting of the petition to anyone else in the unit. Third, the prosecutor

asserts that she followed the well-established practice for filing a late-filed motion, based on advice from the county clerk's office. Finally, the prosecutor describes three periods of time in which COVID-19-related absences required her to quarantine herself and care for her children, and also cites time she took off during her children's school vacations.

Whether a party has established good cause to excuse a delay is a determination within the sound discretion of the reviewing court. See Jordan, 469 Mass. at 144-145; Commonwealth v. Barboza, 68 Mass. App. Ct. 180, 183 (2007).

"Excusable neglect, at least in theory, is something other than, 'Oops, I forgot.' It is meant to apply to circumstances that are unique or extraordinary, not any 'garden-variety oversight.'" (Footnote omitted.) Tai v. Boston, 45 Mass. App. Ct. 220, 222 (1998), quoting Feltch, 383 Mass. at 613-614. "It seems clear that relief will be granted only if the party seeking relief demonstrates that the mistake, misunderstanding, or neglect was excusable and was not due to his own carelessness. . . . The party seeking the relief bears the burden of justifying failure to avoid the mistake or inadvertence." Tai, supra at 223, quoting Reporter's Notes to Mass. R. Civ. P. 60 (b) (1), Mass. Ann. Laws, Rules of Civil Procedure, at 589 (1997). See Scannell v. Ed. Ferreirinha & Irmao, Lda., 401 Mass. 155, 158 (1987); Pasquale v. Finch, 418

F.2d 627, 630 (1st Cir. 1969).  "Discretion is not granted to the judge to allow late filing of a notice of appeal simply because the matter is important to the parties, the issues to be raised in the appeal are debatable, or the consequences to the losing party are harsh.  Rather, such discretion must focus on the nature of the acts or failures to act that are offered up as excusable neglect."  (Footnote omitted.)  Shaev, 66 Mass. App. Ct. at 911-912.

"'[G]ood cause' is a standard no less exacting than 'excusable neglect.'"  Commonwealth v. Trussell, 68 Mass. App. Ct. 452, 454 (2007), quoting Barboza, 68 Mass. App. Ct. at 183-184.  "The . . . function of [rule 14 (b)] is to care for cases where for extraordinary reasons the party was unable to apply for a [rule 4 (c)] extension within the time allowed in that rule."  Trussell, supra at 454-455, quoting Bernard v. United Brands Co., 27 Mass. App. Ct. 415, 418 n.8 (1989).  Therefore, "we would not expect [rule 14 (b)] to depart substantially from the rather exacting standard of [rule 4 (c)]" because "the time to apply under [rule 14 (b)] can run for as much as a year." Bernard, supra.  A lower threshold for good cause "would have the anomalous effect of making it more difficult to obtain an extension of thirty days than it would be to obtain an extension from thirty-one to 365 days."  Trussell, supra at 455.

"[G]arden-variety oversight" does not constitute excusable neglect and, therefore, does not establish good cause.  See Feltch, 383 Mass. at 614, quoting Goldstein v. Barron, 382 Mass. 181, 186 (1980).  And, notably, the meaning of good cause does not "cover the usual excuse that the lawyer is too busy." Barboza, 68 Mass. App. Ct. at 184, quoting Feltch, supra.

Of course, in criminal cases, "there are additional considerations that the appellate court or a single justice . . . properly [may] consider in determining [whether] 'good cause'" exists.  Barboza, 68 Mass. App. Ct. at 184, quoting White, 429 Mass. at 264.  Specifically, both the importance of the rights the defendant would lose and the interests in judicial economy in allowing an appeal to proceed are factors to be considered in the determination whether good cause existed for late filing in a criminal case.  See White, supra at 264-265.

The defendant concedes that the ramifications of COVID-19 exposure and illness justified a portion of the prosecutor's delay.  Nonetheless, only about twenty-two of the 140 days of delay were attributable to COVID-19.  The remaining approximately 118 days were due to miscommunications amongst assistant district attorneys about whether transcripts had been ordered, and the increased over-all workload in the office because it was operating with five fewer assistant district

attorneys than it would have had if the office had been at its full complement.

We do not doubt that the workload at the time this case was assigned to this prosecutor was challenging. Nonetheless, miscommunications concerning whether transcripts have been ordered, and an increased workload, do not constitute good cause justifying the period of delay here. See Barboza, 68 Mass. App. Ct. at 184, quoting Feltch, 383 Mass. at 614 (justification for delay "is not meant to cover the usual excuse that the lawyer is too busy, which can be used, perhaps truthfully, in almost every case. . . . It is [meant] to take care of emergency situations only"). Furthermore, that the prosecutor relied on advice from a clerk in deciding when and what to file also does not constitute good cause justifying the delay here; it was the attorney's duty to file the motion in a timely manner. See Brown v. Quinn, 406 Mass. 641, 645 (1990) ("The concept of excusable neglect does not embrace '[a] flat mistake of counsel about the meaning of a statute or rule" [citation omitted]).

The Commonwealth contends that the applicable filing deadline was confusing and that it was not clear whether the deadline set forth in Mains, 433 Mass. at 36 n.10, was applicable to the allowance of postconviction relief. More specifically, the Commonwealth argues, the language in Mains, supra, only addressed denials of motions for new trials, not

allowances of such motions, and therefore it was not clear whether Mains applied in the circumstances here.  The Commonwealth contends, therefore, that we should exercise our discretion to decide its petition on the merits, notwithstanding the lengthy delay in filing.  See Jordan, 469 Mass. at 145 (deciding Commonwealth's untimely appeal despite lack of good cause for late filing because "there sometimes has been a lack of clarity" by single justices in application of procedural rules governing timeliness).

The period within which to file a petition for extraordinary relief set forth in Mains, 433 Mass. at 36 n.10, unquestionably applied to petitions arising from both the allowance and the denial of postconviction motions filed by either the Commonwealth or the defendant.  In Francis, 411 Mass. at 583, for instance, we concluded that G. L. c. 278, § 33E, applies with equal force to the Commonwealth.  See Randolph v. Commonwealth, 488 Mass. 1, 9 (2021) ("we have required both defendants and the Commonwealth to file gatekeeper petitions in order to appeal from decisions on a variety of motions").  Thus, the procedural requirements imposed on defendants in filing gatekeeper petitions also are applicable to the Commonwealth. The language of G. L. c. 278, § 33E, itself supports the proposition that, with respect to filing deadlines, the Commonwealth would be subject to the limitations established in

Mains.  General Laws c. 278, § 33E, provides that "no appeal shall lie" unless it is allowed by a single justice of this court; the statutory language does not state that only a particular type of appeal, or a specific category of petitioner, is subject to its requirements.

Moreover, since our decision in Mains, the single justice has dismissed as untimely a number of gatekeeper petitions filed by the Commonwealth that sought to challenge a trial court judge's allowance of a defendant's motion for postconviction relief.  See, e.g., Commonwealth vs. Marrero, Supreme Judicial Ct., No. SJ-2017-0441 (Suffolk County Feb. 1, 2018) (dismissing Commonwealth's petition for leave to appeal from allowance of defendant's motion for scientific testing as untimely); Commonwealth vs. Lang, Supreme Judicial Ct., SJ-2016-0460 (Suffolk County Sept. 12, 2017) (denying Commonwealth's petition for leave to appeal from trial court judge's allowance of defendant's postconviction motion to contact members of jury, because petition was untimely and did not otherwise raise meritorious issue).

Finally, the Commonwealth argues that even if there were no good cause for its delay, this case presents a meritorious issue that is worthy of appellate review and the court should exercise its discretion to hear the appeal despite its untimeliness. Because we address the constitutionality of package plea offers

in a paired case, Commonwealth v. DiBenedetto, 491 Mass.    (2023), also released today, we see no need to excuse the Commonwealth's unreasonable delays in filing here.

3.  Conclusion.  The matter is remanded to the county court for entry of an order dismissing the Commonwealth's gatekeeper petition.

So ordered.